IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Larry A. White,<br><br>Plaintiff,<br><br>vs.<br><br>Leon Morrell, Ervin Brazil, Casey Maloney, Jeremiah Mckissack, and Conor Fredericks,<br><br>Defendants. | Civil Action No. 9:24-cv-03821-CMC<br><br>**PLAINTIFF'S AMENDED OMNIBUS MOTION *IN LIMINE* *and* RESPONSE TO DEFENDANTS' MOTIONS IN LIMINE** |

Plaintiff Larry A. White, by and through counsel, hereby moves to prohibit Defendants, their witnesses, and counsel from referring to, eliciting testimony about, or otherwise introducing evidence of: [1]

(1) the prior disciplinary history of Mr. White and of the incarcerated witnesses who will testify at trial;

(2) the alleged gang membership or affiliation of Mr. White and of the incarcerated witnesses;

(3) Mr. White's prior, unrelated medical and mental-health issues, including any prior suicide attempts;

(4) Mr. White's pending, unadjudicated criminal charges;

(5) Mr. White's prior lawsuits and grievances; and

(6) the name, nature, and details of Mr. White's offense of conviction.

---

[1] Mr. White files this combined Motion *in Limine* and Response cognizant of the Court's deadlines under the Amended Pretrial Scheduling Order. ECF No. 163. As the parties finalize exhibit exchanges (upon information and belief certain SCDC policies will be delivered this week) and deposition designations (as they are awaiting the deposition transcript of one witness), and as it becomes clearer exactly which evidence Defendants intend to introduce, Mr. White reserves the right to object to the introduction of specific evidence as it is offered and to seek further relief as the record develops.

Mr. White further responds to the motions *in limine* filed by Defendants as follows:

(1) ECF No. 180 (Zion Dukes): Exclusion is a sanction, and Defendants identify no misconduct by Mr. White; Mr. White does not oppose conditioning Mr. Dukes's trial testimony on his first submitting to examination outside the presence of the jury.

(2) ECF No. 181 (Matthew Marcotte): Mr. Marcotte was sworn and fully examined on every relevant subject before counsel's reading from a newspaper article about his pending criminal case ended the deposition, and his testimony is admissible under Rules 404(b)(2) and 415.

(3) ECF No. 182 (Kenrick Edwards): Not opposed by the Undersigned at this time.

(4) ECF No. 183 (camera footage): Deny as overbroad and premature. The underlying facts are conclusively established by Defendants' Rule 36 admissions, and Mr. White seeks no adverse-inference instruction before trial, reserving that question for the charge conference.

(5) ECF No. 186 (Defendant Morrell's pending charges): Mr. White will not refer to the fact of Defendant Morrell's arrest or charges–the same rule he invokes for himself–but Rule 608(b) permits good-faith cross-examination into the underlying conduct.

(6) ECF No. 187 (SCDC policy): Policy evidence is probative of subjective intent, and the remedy Defendants' own authorities prescribe is a limiting instruction–to which Mr. White consents–not exclusion.

(7) ECF No. 188 (Stacie White): Agree as to clinical diagnoses, which will not be offered. Her statements about her observations of her husband are admissible.

# TABLE OF CONTENTS

**INTRODUCTION AND BACKGROUND** .......... **4**

**ARGUMENT FOR MR. WHITE'S OMNIBUS MOTION IN LIMINE** .......... **5**

I. The Prior Disciplinary History of Mr. White and of the Incarcerated Witnesses (Including Any Exhibits that Reference the Same) Should Be Excluded Under Rules 404(b), 608(b), and 403 .......... 5

II. Evidence of the Alleged Gang Status of Mr. White and of the Incarcerated Witnesses (Including Any Exhibits that Reference the Same) Should Be Excluded .......... 6

III. Mr. White's Prior, Unrelated Medical and Mental-Health Issues—Including Any Prior Suicide Attempts and Any Exhibits that Reference the Same—Should Be Excluded .......... 7

IV. Mr. White's Pending, Unadjudicated Criminal Charges Are Inadmissible .......... 8

V. Evidence of Mr. White's Prior Lawsuits and Grievances Should Be Excluded .......... 9

VI. The Name, Nature, and Details of Mr. White's Offense of Conviction Should Be Excluded, With Impeachment Limited to the Fact of a Felony Conviction .......... 10

**ARGUMENT AGAINST DEFENDANTS' SIX MOTIONS IN LIMINE** .......... **11**

VII. The Motion to Exclude Zion Dukes (ECF No. 180) Should Be Denied in Favor of a Lesser, Proportionate Remedy .......... 11

VIII. The Motion to Exclude Matthew Marcotte (ECF No. 181) Should Be Denied; His Testimony Is Admissible Under Rules 404(b)(2) and 415 .......... 12

IX. The Motion to Exclude "Any Evidence" Concerning Camera Footage (ECF No. 183) Should Be Denied as Overbroad and Premature .......... 14

X. Defendant Morrell's Motion Concerning His Pending Charges (ECF No. 186) Should Be Granted in Part and Denied in Part: The Fact of the Charges Is One Thing; the Underlying Conduct Is Another .......... 15

XI. The Motion to Exclude Testimony Concerning SCDC Policy (ECF No. 187) Should Be Denied; the Remedy Defendants' Own Authorities Prescribe Is a Limiting Instruction, Not Exclusion .......... 17

XII. The Motion to Limit the Testimony of Stacie White (ECF No. 188) Should Be Denied Except as to Clinical Diagnoses, Which Mr. White Does Not Intend to Elicit .......... 18

**CONCLUSION** .......... **20**

## INTRODUCTION AND BACKGROUND

This is a civil rights action brought under 42 U.S.C. § 1983 and South Carolina law arising from a single event: a targeted search of Mr. White's cell in the Restricted Housing Unit ("RHU") at Lee Correctional Institution ("LCI") on the morning of April 11, 2024. Mr. White alleges that Defendants entered his cell without knocking and without first asking him to come to the door and be restrained, took him to the ground, struck him repeatedly, and that Defendant Brazil digitally penetrated his rectum while demanding to know where "drugs" were located.

Following summary judgment, six claims remain for trial: (1) a § 1983 Fourth Amendment claim against Defendant Brazil; (2) a § 1983 Eighth Amendment excessive force claim against Defendants Morrell, Brazil, Maloney, and Fredericks; (3) a § 1983 Eighth Amendment claim against Defendant Brazil based on sexual contact; (4) a § 1983 Eighth Amendment bystander liability claim against Defendant Mckissack; (5) a state law claim for intentional infliction of emotional distress against Defendants Morrell, Brazil, Maloney, and Fredericks; and (6) a state law claim for sexual assault against Defendant Brazil.

Each of these claims turns on what these five officers did inside one cell over the course of a few minutes on one morning, on why they did it, and on the damages suffered. The jury will necessarily know that Mr. White is an inmate; his custodial status is woven into the Eighth Amendment framework itself. What the jury should not hear is character evidence: a recitation of Mr. White's disciplinary file, alleged gang membership from him or his witnesses, his unrelated medical and mental-health history, his unadjudicated criminal charges, his litigation history, or the nature of the crime for which he is serving his sentence.

Conversely, much of the evidence Defendants seek to exclude across their seven motions in limine is squarely relevant, or will likely become relevant given the appropriate testimony.

## ARGUMENT FOR MR. WHITE'S OMNIBUS MOTION *IN LIMINE*

### I. The Prior Disciplinary History of Mr. White and of the Incarcerated Witnesses (Including Any Exhibits that Reference the Same) Should Be Excluded Under Rules 404(b), 608(b), and 403

Federal Rule of Evidence 404(b)(1) prohibits "[e]vidence of any other crime, wrong, or act" offered "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." An inmate's disciplinary record is the archetype of such evidence: a catalog of alleged institutional rule violations offered to suggest that the plaintiff is a troublemaker who must have been resisting, and therefore deserved the force he received. The Fourth Circuit rejected precisely this use of prior-contact evidence in a civil rights trial in *Smith v. Baltimore City Police Department*, 840 F.3d 193, 200–04 (4th Cir. 2016), holding that a plaintiff's prior arrests were inadmissible where they were offered "for purposes of credibility, propensity, and character," and observing that even where such evidence carries "a trace of probative value," the "risk of prejudice" is "enormous" because jurors are apt to assume that "where there's smoke, there's fire." *Id.* at 203–04.

Rule 608(b) forecloses the impeachment route as well. Specific instances of conduct may be inquired into on cross-examination only if they are "probative of the character for truthfulness or untruthfulness" of the witness, and extrinsic evidence of such conduct is barred outright. Fed. R. Evid. 608(b). Prison disciplinary infractions–possessing contraband, refusing an order, being out of place–say nothing about a witness's character for truthfulness. And Rule 403 independently requires exclusion: the jury's task is to decide what happened inside Mr. White's cell on April 11, 2024, not to audit Mr. White's institutional career, and any excursion into the disciplinary file would spawn a series of mini-trials over stale, collateral accusations.

The same protections should extend to the incarcerated witnesses who will testify for Mr. White. Their disciplinary histories are equally unconnected to truthfulness, equally collateral, and equally likely to be deployed for the forbidden inference that inmates with disciplinary records are not to be believed. If Defendants contend that some specific infraction is admissible for a proper, non-character purpose, they should be required to proffer it outside the presence of the jury before any mention is made.

## II. Evidence of the Alleged Gang Status of Mr. White and of the Incarcerated Witnesses (Including Any Exhibits that Reference the Same) Should Be Excluded

The Supreme Court has held that evidence of gang membership is inadmissible where it proves nothing about the issues being tried. In *Dawson v. Delaware*, 503 U.S. 159, 165–67 (1992), the Court found constitutional error in the admission of the defendant's Aryan Brotherhood membership because the evidence "proved nothing more than [his] abstract beliefs" and had "no relevance to the issues being decided." Courts have repeatedly recognized what every trial lawyer knows: gang evidence is uniquely inflammatory. *See Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004) ("[E]vidence relating to gang involvement will almost always be prejudicial and will constitute reversible error."); *United States v. Irvin*, 87 F.3d 860, 864–66 (7th Cir. 1996) (recognizing the substantial danger of unfair prejudice from gang-affiliation evidence).

Here, the irrelevance of gang status is established by Defendants' own records. Defendants have uniformly characterized the event as a targeted cell search for suspected contraband–not an operation directed at a gang member because of his membership. On Defendants' own theory of the case, whether Mr. White–or any witness–ever belonged to a gang has no tendency to make any fact of consequence more or less probable. Fed. R. Evid. 401, 402. Further, during depositions, the witnesses denied Mr. White was a member of any gang.

As to the incarcerated witnesses, gang affiliation is a status, not conduct probative of truthfulness, so Rule 608(b) bars its use for general impeachment and forbids extrinsic proof of it. The narrow bias exception of *United States v. Abel*, 469 U.S. 45, 52–56 (1984), does not assist Defendants: in *Abel*, the foundation was evidence that the witness and the defendant belonged to the same organization whose tenets required members to lie for one another. Defendants developed no comparable foundation in discovery connecting any shared affiliation to a motive to slant testimony in this case. Their deposition questioning previews instead exactly the use Rule 403 forbids: counsel pressed Mr. Marcotte about whether he has a "Crip Up" tattoo or "an upside-down five-point star tattoo" (Marcotte Dep. 30:25–31:16), and asked Ms. White "[w]hich gang" her husband purportedly belonged to (S. White Dep. 21:5–16). Should Defendants believe a genuine *Abel* foundation exists as to any witness, the Court should require that it be established by proffer outside the presence of the jury.

## III. Mr. White's Prior, Unrelated Medical and Mental-Health Issues–Including Any Prior Suicide Attempts and Any Exhibits that Reference the Same–Should Be Excluded

Mr. White claims physical injuries from April 11, 2024–principally to his left ankle, head, mouth, and shoulder–and emotional distress caused by the assault and the sexual contact. His unrelated prior medical history has no tendency to prove or disprove those claims. That history includes childhood medication, possible pre-incarceration mental-health treatment, and–most sensitive–prior suicide attempts. (S. White Dep. 19:5–20:25, 22:10–17.) Whatever marginal relevance Defendants might assert on damages causation, the raw facts of prior suicide attempts are inflammatory in the extreme, and their probative value, if any, is limited. Fed. R. Evid. 401–403.

Defendants seem to agree. They have moved to preclude Ms. White from offering any testimony concerning Mr. White's "depression, suicidal ideation, prior suicide attempts, and other 'mental health struggles.'" (ECF No. 188 at 1–2.) Mr. White concurs that these subjects should not reach the jury from either direction.

The deposition record shows why an order is necessary. Counsel asked Ms. White whether Mr. White ever told her "that the reason he had trouble sleeping and was having nightmares [was] because he was remembering 15 people he had killed throughout his lifetime." (S. White Dep. 21:24–22:3.) Ms. White answered "No." (*Id.* at 22:3.) A question of that kind is an assertion of fact with no record foundation dressed as an inquiry, and before a jury it would be incurably prejudicial. Under Rules 403 and 611(a), the Court should prohibit inquiry into Mr. White's prior medical or mental-health history–including any reference to prior suicide attempts or purported past violence–absent leave of Court following a proffer outside the presence of the jury demonstrating a competent causal connection to the damages claimed.

## IV. Mr. White's Pending, Unadjudicated Criminal Charges Are Inadmissible

Mr. White has pending, unadjudicated criminal charges. The governing law is settled–and Defendants have briefed it to this Court themselves. Rule 609 permits impeachment "by evidence of a criminal conviction" only; a pending charge is not a conviction. Fed. R. Evid. 609(a). The Fourth Circuit has held that "the cross-examiner may not go further and inquire of a defendant concerning only his prior arrest or indictment for crime," because the probative value of such evidence "is so overwhelmingly outweighed by its inevitable tendency to inflame and prejudice the jury" that "total and complete exclusion is required." *United States v. Pennix*, 313 F.2d 524, 529 (4th Cir. 1963); *accord United States v. Ling*, 581 F.2d 1118, 1121 (4th Cir. 1978) (arrest "happens to the innocent as well as the guilty"). Unadjudicated charges are likewise inadmissible

propensity evidence under Rule 404(b)(1) and independently excludable under Rule 403. *Smith*, 840 F.3d at 203–04.

Indeed, Defendant Morrell's own motion *in limine* invokes these authorities to exclude *his* pending charges. (ECF No. 186 at 3–5.) On that point, Mr. White agrees, and the agreement is symmetric: the *fact* of a pending, unproven charge is inadmissible as to every witness in this courtroom, Mr. White and Defendant Morrell alike. But the symmetry begins and ends with the fact of the charges. Whether the *conduct* underlying a charge may be explored on cross-examination is a different question, governed by a different standard–whether that conduct is probative of the witness's character for truthfulness under Rule 608(b)–and Mr. White addresses that question as to Defendant Morrell below.

As to Mr. White, both questions come out the same way: the fact of his pending charges–unproven accusations as to which he is presumed innocent–cannot be used against his credibility or to suggest propensity, and the conduct alleged is a crime of violence, which the Fourth Circuit has recognized says little or nothing about truthfulness and serves only the forbidden propensity inference. *See United States v. Sanders*, 964 F.2d 295 (4th Cir. 1992). And where the pending charge is for a crime of violence, the "where there's smoke, there's fire" danger identified in *Smith* reaches its zenith in an excessive force trial: a jury told that the plaintiff stands accused of a violent crime will be invited to discount his injuries and to assume that whatever force the officers used must have been warranted.

## V. <u>Evidence of Mr. White's Prior Lawsuits and Grievances Should Be Excluded</u>

Evidence that a plaintiff has sued or grieved before is classic litigiousness evidence, offered for the inference that the plaintiff is a chronic complainer whose current claims are manufactured. Courts often exclude it. *See Outley v. City of New York*, 837 F.2d 587, 592–95 (2d Cir. 1988)

(reversing where the plaintiff's prior lawsuits were used to paint him as litigious; any "slight probative value" was outweighed by "the substantial danger of jury bias against the chronic litigant"); *Raysor v. Port Authority*, 768 F.2d 34, 40 (2d Cir. 1985) ("A charge of litigiousness is a serious one . . . ."). Such evidence is other-act character evidence under Rule 404(b)(1) and fails Rule 403 in any event.

The point applies with added force to prison grievances. The Prison Litigation Reform Act *requires* an inmate to exhaust administrative remedies before filing suit. 42 U.S.C. § 1997e. Permitting Defendants to brandish Mr. White's grievance history as evidence of a litigious character would penalize him for doing exactly what Congress commands.

## VI. <u>The Name, Nature, and Details of Mr. White's Offense of Conviction Should Be Excluded, With Impeachment Limited to the Fact of a Felony Conviction</u>

The jury will know from the first minute of trial that Mr. White is serving a prison sentence; his custodial status is inseparable from his Eighth Amendment claims. Under Rule 609(a)(1)(A), a felony conviction may be used to impeach a witness in a civil case subject to Rule 403. But once the jury knows the witness is a convicted felon serving a sentence, the *name and nature* of the offense add nothing to the permissible credibility inference–they add only the impermissible one. *See Old Chief v. United States*, 519 U.S. 172, 185–92 (1997) (where the fact of consequence is the status of conviction, the name and nature of the offense carry "prejudicial" risk without probative gain); *United States v. Beahm*, 664 F.2d 414, 418–19 (4th Cir. 1981) (evidence of a similar offense "often does little to impeach the credibility of a testifying defendant while undoubtedly prejudicing him").

Specifically, Mr. White's current offenses of conviction are for assault and battery first degree, assault and battery second degree, pointing a firearm, carrying a prohibited weapon, attempted murder, burglary first degree, and burglary second degree. Mr. White therefore requests

that impeachment be limited to the fact that he has been convicted of a felony and is serving a sentence of incarceration, and, if the Court deems it necessary, the date of conviction–excluding the name and nature of the offense, the length of the sentence, the identity or location of any victim, any reference to an alleged escape attempt, and any reference to the 2018 Lee Correctional Institution riot or to any investigation of Mr. White's alleged involvement in it. Mr. White stands ready to enter an appropriate stipulation. Because references to the riot investigation and to a victim's housing location appear in otherwise-potentially admissible records, including medical records, Mr. White further requests that the Court direct the parties to redact such references from any exhibit before it is published to the jury.

## **ARGUMENT AGAINST DEFENDANTS' SIX MOTIONS *IN LIMINE*[2]**

### **VII. The Motion to Exclude Zion Dukes (ECF No. 180) Should Be Denied in Favor of a Lesser, Proportionate Remedy**

Defendants ask the Court to exclude Zion Dukes as a trial witness because Mr. Dukes–a third-party inmate in SCDC custody–refused to leave his cell for his noticed deposition. Exclusion of a trial witness is a drastic sanction, and Defendants identify no misconduct by Mr. White or his counsel to support it. Mr. White disclosed Mr. Dukes, did not oppose his deposition, and has no custody or control over him; neither Mr. White nor the Undersigned procured or encouraged the refusal. Defendants cite no order of this Court compelling Mr. Dukes's attendance that was violated, sought no relief under Rule 37(a) or Rule 45 when the refusal occurred, and made no further attempt to secure his testimony in the weeks that remained before the discovery deadline.

---

[2] Defendants filed seven motions *in limine*. However, the Undersigned does not dispute the nature of the interaction and refusal by Mr. Kenrick Edwards and, at this point, is not requesting his presence. (ECF No. 182).

The proportionate remedy is not to punish Mr. White for a nonparty's conduct but to cure any prejudice to Defendants. Mr. Dukes will be physically present for trial pursuant to Plaintiff's Motion to Transport. Mr. White does not oppose an order conditioning Mr. Dukes's trial testimony on his first submitting to an examination outside the presence of the jury before he takes the stand. If Mr. Dukes refuses to come to Court, or be examined, exclusion at that point would rest on his own persistent refusal rather than on conduct attributable to no one in this courtroom. On the current record, the motion should be denied.

## VIII. <u>The Motion to Exclude Matthew Marcotte (ECF No. 181) Should Be Denied; His Testimony Is Admissible Under Rules 404(b)(2) and 415</u>

Defendants advance two grounds: that Mr. Marcotte "refused to complete his deposition," and that his testimony is inadmissible propensity evidence under Rule 404(b). Neither withstands examination of the transcript.

**The deposition.** Mr. Marcotte appeared, was sworn, and answered questions for approximately an hour. He described in detail the November 2023 incident at Lee Correctional in which, while he was on security detention in the RHU, Defendants Morrell and Brazil entered his cell at night without a knock or an order to submit to restraints, held him down, and beat him–including Brazil squeezing his testicles–while telling him he was "resisting" when he had been asleep. (Marcotte Dep. 9:8–10:19.) He explained his affidavit, confirmed that he and Mr. White were neighbors whose cells were mutually visible, and candidly acknowledged that he was not present for and did not witness the April 11, 2024, incident. (Marcotte Dep. 15:15–16:18.) Defense counsel thus had–and used–a full opportunity to discover every subject on which Mr. Marcotte would testify at trial.

What ended the deposition was not obstruction of discovery relevant to this case. After Mr. Marcotte declined to discuss his tattoos and his own pending matters, counsel began reading aloud

from a newspaper article about Mr. Marcotte's criminal case, including the assertion that his victim was the brother of a state supreme court justice. (Marcotte Dep. 32:10–34:14.) Mr. Marcotte, understandably alarmed that his pending criminal matters were being injected into a civil deposition, ended his participation. (Marcotte Dep. 34:10–35:7.) That exchange had nothing to do with April 11, 2024, or with November 2023.

**Rule 404(b).** Defendants read Rule 404(b) as if it ended at subsection (b)(1). It does not. Rule 404(b)(2) expressly permits other-act evidence for non-character purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Fourth Circuit admits such evidence where it is (1) relevant to an issue other than character, (2) necessary, (3) reliable, and (4) not substantially outweighed by unfair prejudice under Rule 403. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). Each element is satisfied.

The central disputed issue at trial is the officers' subjective intent: whether force was applied "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Mr. Marcotte's testimony that the same two Defendants–Morrell and Brazil–conducted a strikingly similar no-knock nighttime entry on a restrained-status RHU inmate months earlier, held him down, beat him, and accused him of "resisting" while he was asleep, is directly probative of intent, plan, and absence of mistake or accident on April 11, 2024. It is necessary: by Defendants' own admission, no camera recorded the incident, leaving a credibility contest in which state-of-mind evidence carries particular weight. It is reliable: it is sworn testimony, given under oath and subject to cross-examination. And its probative value is high precisely because of its similarity, while the Court can address any residual prejudice with a limiting instruction confining the evidence to intent, plan, and absence of mistake.

**Rule 415.** There is a second, independent basis for admission that Defendants' motion does not acknowledge. Mr. White asserts claims for relief against Defendant Brazil based on sexual assault–both the § 1983 Eighth Amendment sexual contact claim and the state-law sexual assault claim. (ECF No. 125.) In such a case, Rule 415(a) provides that "the court may admit evidence that the party committed any other sexual assault." Fed. R. Evid. 415(a). Mr. Marcotte testified that during the November 2023 assault, Brazil squeezed his testicles while holding him down. (Marcotte Dep. 10:10–15.) Congress enacted Rules 413 through 415 precisely to permit this category of evidence in sexual assault cases, subject to Rule 403 balancing. *See Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 151–55 (3d Cir. 2002). The motion should be denied.

## IX. <u>The Motion to Exclude "Any Evidence" Concerning Camera Footage (ECF No. 183) Should Be Denied as Overbroad and Premature</u>

Defendants' motion conflates two distinct things: an adverse-inference *instruction*, and the underlying *facts* concerning cameras and footage. The authorities Defendants cite–*Silvestri*, *Hodge*, *Vodusek*, and their progeny–address when a court may *sanction* a party for spoliation, including by charging an adverse inference. None holds that a jury may not hear admitted, relevant facts about whether an incident was recorded and whether requested footage exists.

Those facts are admitted. Under Rule 36(b), each admitted matter "is conclusively established." Fed. R. Civ. P. 36(b). A motion *in limine* is not a vehicle for un-admitting Rule 36 admissions. The related facts–that Mr. White requested preservation of the footage in his grievance the day after the incident, and that Ms. White emailed the SCDC Ombudsman on April 17, 2024, six days after the incident, asking that camera footage from April 11 between 10:00 a.m. and 1:00 p.m. be preserved–are likewise ordinary, relevant evidence. The absence of any recording bears on the completeness of the investigation, on the weight of the competing accounts, and on the jury's common-sense question of why, in 2024, there is no video of a six-officer operation. Both

sides are entitled to present and argue those admitted facts; indeed, Defendants themselves intend to rely on the absence of footage.

To be clear about what Mr. White is and is not seeking: Mr. White is not asking the Court, before trial, to charge an adverse inference against the individual Defendants. Whether any instruction concerning the footage is warranted is a question for the charge conference, on the full trial record, and Mr. White reserves his position on it–as Defendants may reserve theirs. But an order excluding "any evidence" that footage was not preserved would sweep in conclusively established Rule 36 admissions, Mr. White's grievance, and Ms. White's contemporaneous preservation request. The motion should be denied, or at most granted only to the limited extent of deferring any request for an adverse-inference instruction to the charge conference.

## X. Defendant Morrell's Motion Concerning His Pending Charges (ECF No. 186) Should Be Granted in Part and Denied in Part: The Fact of the Charges Is One Thing; the Underlying Conduct Is Another

Mr. White agrees with Defendant Morrell on the narrow point his motion actually establishes: the *fact* of an arrest, indictment, or pending charge is not admissible to attack a witness's character for truthfulness, and Mr. White does not intend to offer extrinsic evidence of Defendant Morrell's arrest or charges or to refer to them as such. *Pennix*, 313 F.2d at 529; *Ling*, 581 F.2d at 1121. Mr. White invokes the same rule for himself.

But the motion overreaches when it asks the Court to bar all "inquiry concerning" the subject. Rule 608(b) expressly permits cross-examination into "specific instances of a witness's conduct" that are "probative of the character for truthfulness or untruthfulness" of the witness–and the pendency of criminal charges arising from that conduct does not immunize the conduct itself from inquiry. Fed. R. Evid. 608(b); *see United States v. Whitmore*, 359 F.3d 609, 619–22 (D.C. Cir. 2004) (Rule 608(b) authorizes good-faith cross-examination of a law-enforcement witness

concerning underlying acts of misconduct bearing on veracity). The distinction is the very one *Pennix* draws: an accusation proves nothing, but the witness's own conduct–inquired into in good faith, with the examiner bound by the answer–may be probative of truthfulness.

Mr. White wants to be precise about what he is and is not arguing. The principle he proposes is perfectly symmetric, and it is Rule 608(b)'s own: the *fact* of a pending charge is inadmissible as to every witness in the courtroom–Defendant Morrell and Mr. White alike–and the *conduct* underlying a charge is a proper subject of good-faith cross-examination only if that conduct is itself probative of the witness's character for truthfulness. Fed. R. Evid. 608(b). The rule does not change depending on who is being crossed. What changes is the conduct.

The conduct underlying Defendant Morrell's charges–selling confidential SCDC information to inmates for payment, laundering the proceeds, obstructing justice, and corrupting official duties for personal gain–is deception for profit by a sworn officer. It goes to the heart of veracity, which is precisely what Rule 608(b) demands. The conduct underlying Mr. White's pending charge is an alleged act of violence, and the Fourth Circuit has been clear that acts of violence, whatever else they may show, say little or nothing about whether a witness will tell the truth under oath; their real work in front of a jury is the forbidden propensity inference. *See Smith*, 840 F.3d at 203–04. Cross-examining Defendant Morrell about clandestine self-dealing and obstruction of justice, is Rule 608(b) applied as written; cross-examining Mr. White about an alleged act of violence would be propensity dressed as impeachment, barred by Rules 404(b)(1) and 403. The same neutral principle yields different results here because the conduct differs–not because the parties do.

The conduct matters for a second reason. At the time of the April 11, 2024 incident, Defendant Morrell was the lieutenant responsible for contraband interdiction at Lee Correctional

and, per the incident reports, personally took custody of the items removed from Mr. White's cell "for investigation." Evidence that Defendant Morrell monetized his contraband-related position bears on motive and plan.

Finally, if Defendant Morrell elects to invoke his Fifth Amendment privilege in response to otherwise-proper questions, the jury in this civil case may draw an adverse inference from that invocation. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). The Court should therefore grant the motion only insofar as it precludes reference to the fact of Defendant Morrell's arrest, indictment, or pending charges, and deny it insofar as it would preclude (a) good-faith cross-examination under Rule 608(b) into the underlying conduct, (b) proper Rule 404(b)(2) questioning, or (c) the consequences of any invocation of the Fifth Amendment.

## XI. The Motion to Exclude Testimony Concerning SCDC Policy (ECF No. 187) Should Be Denied; the Remedy Defendants' Own Authorities Prescribe Is a Limiting Instruction, Not Exclusion

Mr. White does not contend–and will not argue to the jury–that a violation of SCDC policy is itself a constitutional violation. He does not oppose an instruction telling the jury exactly that. But Defendants' motion goes much further, asking the Court to exclude the policies and every reference to them. Three independent problems require denial.

***First***, Defendants have already admitted the central policy facts under Rule 36. Every Defendant admitted that SCDC policy requires that a use-of-force camera be present any time a planned use of force occurs, that no such camera was used, and that Defendants entered the cell without first asking Plaintiff to come to the door and be restrained. Those matters are "conclusively established." Fed. R. Civ. P. 36(b). Having admitted what the policy requires, Defendants cannot obtain an order barring the jury from hearing it.

***Second***, Defendants' own lead authority defeats their relevance argument. *Williams v. Benjamin* holds that an SCDC use-of-force policy is not the constitutional standard–but in the same breath recognizes that compliance with policy is "evidence" bearing on the officers' good faith. 77 F.3d 756, 766 (4th Cir. 1996). What is evidence of good faith when followed is evidence of its absence when knowingly disregarded. The governing Eighth Amendment inquiry is subjective, and an officer's knowing departure from the requirements he was trained to follow is classically probative of that state of mind. Defendants' remaining authorities say the same. The remedy Defendants' authorities prescribe is the limiting instruction Mr. White has already said he does not oppose–not exclusion.

***Third***, the lay-opinion argument attacks a strawman. Mr. White does not intend to ask incarcerated witnesses to construe SCDC manuals. The policy evidence will come from the Defendants themselves–officers who were trained on and operated under the policies–from the policy documents, and from Defendants' Rule 36 admissions. Cross-examining an officer about his own training and the requirements he understood to govern his conduct is standard examination material, not expert opinion. And to the extent an inmate witness testifies to what officers in the RHU ordinarily did before entering a cell–knocking, directing the occupant to cuff up at the door flap–that is perception-based lay testimony under Rule 701(a), rationally based on years of firsthand observation, not an interpretation of policy. The Court should deny the motion, with the understanding that Mr. White consents to an instruction that a violation of internal policy is not, by itself, a violation of the Constitution.

## XII. <u>The Motion to Limit the Testimony of Stacie White (ECF No. 188) Should Be Denied Except as to Clinical Diagnoses, Which Mr. White Does Not Intend to Elicit</u>

Mr. White can narrow this dispute considerably: Ms. White will not be offered as an expert, and Mr. White will not ask her to diagnose depression, to apply clinical labels, or to opine on

psychiatric causation. To that limited extent, the motion is unopposed. But the motion as drafted would go much further, barring Ms. White from testifying to matters squarely within her personal knowledge and perception.

***First***, Rule 602's personal-knowledge requirement and Rule 701(a)'s perception requirement are measured against what the witness actually perceived–and Ms. White personally perceived a great deal. She received Mr. White's contemporaneous message the morning of April 11, 2024, at 10:37 a.m., describing the assault and the digital penetration, and she authenticated that message at her deposition. She speaks with Mr. White regularly and hears, firsthand, what he says and how he says it–including statements such as "I'm tired. . . . I just want to end it all." (S. White Dep. 41:13–16.) A spouse's firsthand account of what her husband said to her, his tone, and the changes she has perceived in him over time is the very definition of testimony "rationally based on the witness's perception." Fed. R. Evid. 701(a). Perception is not limited to in-person observation; what Ms. White heard with her own ears on calls and read in messages sent to her is her perception.

***Second***, Mr. White's statements to his wife are independently admissible. His April 11 messages, sent within a short time of the assault, qualify as excited utterances under Rule 803(2) and as statements of then-existing physical and emotional condition under Rule 803(3). His ongoing statements about his fear, pain, and emotional state are likewise admissible under Rule 803(3). A motion directed at Ms. White's "opinions" cannot be used to exclude Mr. White's own admissible statements, which she will simply recount.

***Third***, the Fourth Circuit has repeatedly recognized that emotional distress may be proven through lay testimony, including corroborating testimony from family members–no expert is required. *See Price v. City of Charlotte*, 93 F.3d 1241, 1251–54 (4th Cir. 1996); *Knussman v.*

*Maryland*, 272 F.3d 625, 640–42 (4th Cir. 2001). Ms. White's before-and-after observations–drawn from the very window she identified at deposition, "how he's been doing since before the incident and after the incident and right now" (S. White Dep. 20:2–5)–are precisely the corroboration *Price* contemplates. Notably, the deposition passages Defendants quote concern Mr. White's *pre-incarceration* history–a subject Ms. White candidly disclaimed knowledge of, that Mr. White does not intend to elicit from her, and that Mr. White separately moves to exclude. The motion should be denied except to the extent it precludes clinical diagnoses and expert-style causation opinions, which will not be offered.

## CONCLUSION

For the foregoing reasons, Mr. White respectfully requests that the Court enter an Order *in limine* prohibiting Defendants, their witnesses, and counsel from referring to, eliciting, or introducing evidence as requested herein.

Mr. White further requests that the Court deny Defendants' motions *in limine* at ECF Nos. 180, 181, 183, 186, 187, and 188 for the reasons set forth herein.

Respectfully submitted,

/s/ Derek A. Shoemake

Derek A. Shoemake (No. 10825)
derek@lawconnell.com
Connell Law Firm
20 Townlee Lane, Suite A
Lugoff, SC 29078
(803) 408-8500

Attorney for Mr. White

August 4, 2026
Lugoff, SC