**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| Larry A. White,<br><br>Plaintiff,<br><br>v.<br><br>Leon Morrell, Ervin Brazil, Casey Maloney, Jeremiah Mckissack, and Conor Fredericks,<br><br>Defendants. | ) | Case No: 9:24-cv-3821-CMC<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*** |

Defendants submit this response memorandum in opposition to Plaintiff's Motion *in Limine* (ECF No. 189). For the reasons set forth below, Defendants respectfully request the Court deny Plaintiff's Motion *in Limine* and allow Defendants, their witnesses, and counsel to refer to, elicit testimony concerning, or otherwise introduce evidence of: (1) Plaintiff's prior medical and mental-health records, including prior suicide attempts; (2) the gang membership and affiliation of Plaintiff and of the incarcerated witnesses; (3) the name, nature, and details of the incarcerated witnesses' offenses of conviction; (4) the name, nature, and details of Plaintiff's offense of conviction; and (5) the prior disciplinary history of Plaintiff.

**STANDARD FOR ADMISSIBILITY OF EVIDENCE**

"Questions of trial management are quintessentially the province of the district courts." United States v. Smith, 452 F.3d 323, 332 (4th Cir. 2006). District courts, therefore, are empowered to rule upon evidentiary issues set forth within motions *in limine* "in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." United States v. Verges, No. 1:13-cr-222-JCC, 2014 U.S. Dist. LEXIS 17969, at *2 (E.D. Va. Feb. 12, 2014). Generally, all "[r]elevant evidence is admissible" unless otherwise prohibited by the United States Constitution, the Rules of Evidence, federal statutes, or other rules

prescribed by the Supreme Court. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401(a), (b).

Exclusion of relevant evidence requires a balancing analysis under Rule 403. Fed. R. Evid. 403 provides the "court may exclude relevant evidence if its probative value **is substantially outweighed** by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." (emphasis added). Since the probative value must be **substantially outweighed** by one or more of the listed prejudicial dangers, the Fourth Circuit has directed "that relevant evidence should only be excluded . . . 'when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" United States v. Hassan, 742 F.3d 104, 132 (4th Cir. 2014) (quoting United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008)).

## I. Plaintiff's Medical and Mental Health History Should be Admitted.

Plaintiff contends that his prior medical history and previous emotional/mental health treatment history should be excluded because this history has no tendency to prove or disprove any claims of injury asserted, and the prejudicial nature of these records outweighs their probative value. ECF No. 189 at 7-8. Plaintiff has squarely placed his physical and psychological condition at issue, and these records are directly relevant to the jury's determination of Plaintiff's claim for damages and Plaintiff's claims under the Eighth Amendment. Fed. R. Evid. 401(a), (b).

As an initial matter, Plaintiff completely mischaracterizes Defendants' motion *in limine* to preclude Plaintiff's wife from offering testimony concerning his alleged psychological injuries (ECF No. 188). Defendants moved "for an Order excluding from trial any testimony, opinion, characterization, or diagnosis by Stacie White concerning Plaintiff Larry A. White's mental,

psychological, or psychiatric conditions **to the extent such testimony is not based on Ms. White's own personal, firsthand observation and perception**, and **further precluding Ms. White from offering any opinion or diagnosis regarding Plaintiff's mental conditions that requires scientific, technical, or other specialized knowledge**." ECF No. 188 at 1. This motion *in limine* was by no means an effort to exclude evidence of Plaintiff's medical and mental health history **as a whole**. Rather, this motion was entirely based upon Plaintiff's wife's lack of personal knowledge and/or personal perception of Plaintiff's psychological condition, and Plaintiff's wife's status as a lay witness as opposed to an expert. Defendants have not, and do not, assert "that these subjects should not reach the jury from either direction." *See* ECF No. 189 at 8.

Within the Amended Complaint, Plaintiff seeks damages for the following injuries: psychological trauma, mental anguish, depression, panic attacks, nightmares, headaches/head pain, back pain, shoulder pain, and ankle pain. ECF No. 29 at 3-4. The general purpose of damages under 42 U.S.C. § 1983 is to "compensate persons for injuries that are caused by the deprivation of constitutional rights." Carey v. Piphus, 435 U.S. 247, 254-57 (1978) ("[D]amages awards under § 1983 should be governed by the principle of compensation."). Like the common-law tort claims upon which § 1983 were modeled, claims brought pursuant to § 1983 require both "but-for" and proximate cause analyses. Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012); *see* Malley v. Briggs, 475 U.S. 335, 346 n.7 (1986) ("§ 1983 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961)).

Moreover, Plaintiff sets forth a state law claim for intentional infliction of emotional distress ("IIED") against Defendants Morell, Brazil, Maloney, and Fredericks. To prevail on such claim, the Plaintiff must establish, by a preponderance of evidence, that Defendants caused

Plaintiff to suffer emotional distress which was so severe that "no reasonable man could be expected to endure it." Bass v. S.C. Dep't of Soc. Servs., 780 S.E.2d 252, 260–61 (S.C. 2015); *see also* Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 856 (D.S.C. 2015). The South Carolina Supreme Court has "emphasized the heightened burden of proof in" this element of the tort, requiring courts to "look for something 'more' – in the form of third party witness testimony and other corroborating evidence – in order to make a prima facie showing of 'severe' emotional distress." Hansson v. Scalise Builders of S.C., 374 S.C. 352, 356-59, 650 S.E.2d 68, 71-72 (2007).

The probative value of introducing facts of Plaintiff's previous physical and psychological conditions, including prior suicide attempts, to the jury is not substantially outweighed by whatever marginal risk of prejudice is posed. Fed. R. Evid. 403. The jury must be afforded the opportunity to examine all evidence relevant to Plaintiff's claim for compensatory damages and IIED – including evidence of Plaintiff's physical and psychological condition prior to the incident in question – to determine the extent of the injuries which Plaintiff alleges were actually or proximately caused by the Defendants actions, as well as how 'severe' the emotional distress allegedly is. Fed. R. Evid. 401(a), (b). To make a proper determination on the extent of these alleged injuries, the jury must form a baseline of Plaintiff's physical and psychological condition prior to the incident in question. The jury cannot do so without being afforded the opportunity to examine the Plaintiff's medical and mental health history. Further, this evidence does not create "a genuine risk that the emotions of a jury will be excited to irrational behavior." Siegel, 536 F.3d at 319.

Therefore, Plaintiff's prior medical history and previous emotional/mental health treatment history are highly probative, relevant, and consequential facts necessary to determine Plaintiff's

claims for compensatory damages. Accordingly, Defendants respectfully request this Court denies Plaintiff's Motion in Limine to exclude Plaintiff's prior medical and mental-health issues.

## II. Evidence of Plaintiff's and the Incarcerated Witnesses' Gang Affiliation and Status (Including Any Exhibits that Reference the Same) Should be Admitted to Demonstrate Bias.

Evidence of Plaintiff's and the incarcerated witnesses' membership in a common organization is highly probative, relevant, and necessary for the jury's determinations of witness credibility and bias. Impeachment of a witness for bias, prejudice, or corruption is contemplated and permitted by the Federal Rules of Evidence. United States v. Abel, 469 U.S. 45, 50-52 (1984) (holding extrinsic evidence of defendant and witness's membership in a prison gang was sufficiently probative of witness's possible bias towards defendant to warrant admission into evidence). Indeed, this evidence is relevant because "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." Id. Therefore, Plaintiff and the incarcerated witnesses' common membership in a criminal gang/organization, "even without proof that the witness or part has personally adopted its tenets, is certainly probative of bias." Id.

Plaintiff asserts "the incarcerated witnesses' gang affiliation is a status, not conduct probative of truthfulness, so Rule 608(b) bars its use for general impeachment and forbids extrinsic proof of it." ECF No. 189 at 7. Evidence of the witnesses' and Plaintiff's membership in the 'Crips', however, need not be contemplated in the scope of Rule 608(b) – "[i]t [is] enough that such evidence could properly be found admissible to show bias." Abel, 469 U.S. at 56 ( reversing the Court of Appeals while "intimat[ing] no view as to whether the evidence of Mills' membership in an organization having the tenets ascribed to the Aryan Brotherhood would be a specific instance of Mills' conduct which could not be proved against him by extrinsic evidence except as otherwise

provided in Rule 608(b).") As articulated by the Supreme Court, "there is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case." Id.

Evidence of the Plaintiff's and witnesses' common membership in the 'Crips' gang[1] is not being offered to convict either of a crime, but to impeach their testimony by way of showing bias: "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." Abel, 469 U.S. at 52. To be sure, there is no chance that Plaintiff will "be convicted by his mere association with the organization," Abel, 469 U.S. at 53, which highlights the primary concern of introducing evidence of gang membership in a criminal trial: that the jury will unfairly infer the criminal defendant's membership in a criminal gang serves as evidence that the defendant acted in accordance with the gang's tenets on the particular occasion in question. The witnesses and Plaintiff "are subject to no sanction other than that [t]he[y] might be disbelieved." Abel, 469 U.S. at 53.

Moreover, Plaintiff's analysis of the "narrow bias exception of" United States v. Abel, 469 U.S. 45 (1984), is incorrect. ECF No. 189 at 7. Plaintiff argues "in Abel, the foundation was evidence that the witness and the defendant belong to the same organization whose tenets required members to lie for one another." Id. The Supreme Court, however, specifically denied the necessity of this foundation to introduce evidence indicative of bias. The Supreme Court explained that because evidence of the witness and the defendant's membership in a common organization was offered to impeach the witness's testimony, there was "no requirement that the witness must be shown to have subscribed to all the tenets of the organization, either casually or in a manner sufficient to permit him to be convicted under laws" governing the conviction of persons "for

[1] *See* Defs.' Exhibit A, Plaintiff's and Witnesses' STG Files.

belonging to organizations which espoused illegal aims and engaged in illegal conduct." Abel, 469 U.S. at 52-53. Instead, "[f]or purposes of the law of evidence the jury may be permitted to draw an inference of subscription to the tenets of the organization from membership alone, even though such an inference would not be sufficient to convict beyond a reasonable doubt in a criminal prosecution." Id. at 53.

Such demonstration of the organization's tenets which "required members to lie for one another," ECF No. 189 at 7, is not required; Rather, the tenets goes towards the weight of the bias. Abel, 469 U.S. at 54 ("The attributes of the Aryan Brotherhood – a secret prison sect sworn to perjury and self-protection – bore directly not only on the *fact* of bias but also on the *source* and *strength* of Mills' bias. The tenets of this group showed that Mills had a powerful motive to slant his testimony towards respondent, or even commit perjury outright.") (emphasis in original). Indeed, if the 'Crips' gang is merely "a loosely knit group having nothing to do with the subject matter of the litigation, the inference of bias arising from common membership may be small or nonexistent." Id. ("If the prosecutor had elicited that both respondent and Mills belonged to the Book of the Month Club, the jury probably would not have inferred bias even if the District Court had admitted the testimony.").

The jury is "entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony," and it is ultimately the jury's function, "as finder of fact and weigher of credibility," to assess the probative value of the bias posed by common membership in a criminal organization. Id. at 52. Defendants submit relevant, competent evidence which tends to show bias on the part of a witness is relevant and highly probative, and in the context of this civil suit, is not substantially outweighed by any potential prejudice, confusion of the issues, or delay. Accordingly, Defendants respectfully request that this Court deny Plaintiff's Motion in Limine to

exclude evidence of the gang status of Plaintiff and of the incarcerated witnesses, including any exhibits referencing the same.

### III. The Prior Conviction History of the Incarcerated Witnesses (Including Any Exhibits that Reference the Same) Should be Admitted Under Rule 609(a)(1)(A).

Any use of evidence of the incarcerated witnesses' criminal convictions "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year" in order to attack the witnesses' credibility/character for truthfulness "must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A). United States v. Estrada, an oft-cited Second Circuit opinion by future Supreme Court Justice Sotomayor, thoroughly analyzed the proper scope and purpose of impeachment under Fed. R. Evid. 609. 430 F.3d 606 (2d Cir. 2005).

Justice Sotomayor's opinion set forth the required procedure district courts must undertake when analyzing an attempt to attack a witness's character for truthfulness by evidence of a criminal conviction: "[d]istrict courts must [] undertake an individualized balancing analysis under Rule 609(a)(1) before . . . admit[ting] evidence of the nature of a witness's prior felony convictions," and this balancing requirement "presumes that some details of a witness's felony convictions will be considered." Estrada, 430 F.3d at 616. "In conformity with Rule 403, unless the risk of unfair prejudice, confusion, or delay **substantially outweighs** the probative value of a felony conviction, **it is the jury's function to assess the probative value of a witness's specific conviction or convictions as part of its overall evaluation of the witness's credibility**." Id. at 616 (emphasis added).

The Second Circuit explained this procedure is supported by:

> [an] overwhelming weight of authority . . . [which] suggest that, while it may be proper to limit, under Rule 609(a)(1), evidence of the underlying facts or details of a crime of which a witness was convicted, inquiry into the essential facts of the conviction, including the nature or statutory name of each offense, its date, and the

> sentence imposed is presumptively required by the Rule, subject to balancing under Rule 403.

Id. at 616 (internal quotation marks omitted); *see also* Doe v. Sullivan County, 956 F.2d 545, 551 (6th Cir. 1992) (noting, in the context of a § 1983 action, evidence surrounding a witness's prior felony conviction should include "the nature of the crime, the number of counts, and the date of the disposition."); United States v. Howell, 285 F.3d 1263, 1267-68 (10th Cir. 2002) ("Rule 609(a)(1) requires a district court to admit evidence of the nature and number of a non-defendant witness' prior felony convictions." (quoting Burston, 159 F.3d at 1336); Campbell v. Greer, 831 F.2d 700, 707 (7th Cir. 1987) (concluding there was "no precedent for withholding the identity of the felony from the jury when using a conviction to impeach a witness's testimony" in a civil case, but rather the "crime must be named" so that the jury may properly evaluate a witness's credibility, which it "cannot do [] if all it is told is that the witness was convicted of a 'felony.'").

The Second Circuit noted that when "conviction evidence is offered against a witness other than the accused, the balance usually should be struck in favor of admissibility." Estrada, 430 F.3d at 620 (citing 28 CHARLES ALAN WRIGHT & VICTOR JAMES GOLD, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 6134, at 244-45 (1993) (hereinafter, "WRIGHT & GOLD § 6134")). This presumption of admissibility "is consistent with both the Rule's structure and the insight that different felonies, even those that do not constitute *crimen falsi*, bear on credibility to varying degrees." Estrada, 430 F.3d at 616; United States v. Burston, 159 F.3d 1328, 1335 (11th Cir. 1998) ("The implicit assumption of Rule 609 is that prior felony convictions have probative value . . . [which] necessarily varies with their nature and number. Evidence of a murder conviction says something far different about a witness' credibility than evidence of a conviction for a minor drug offense."). Thus, "district courts are admonished to consider that Rule 609(a)(1) crimes, which do not bear directly on honest such as to be automatically admissible under Rule 609 (a)(2), may

nonetheless be highly probative of credibility." Id. at 617-18 ("While many felonies exemplifying untruthful behavior fall within the ambit of Rule 609(a)(2), many crimes that do not fit that provision are nonetheless quite probative of veracity.").

The Second Circuit further explained although crimes which reflect adversely on a person's integrity and "bear on honesty – such as those involving deceit, fraud, and theft –" are often more probative than mere acts of violence "which may result from a short temper, a combative nature, extreme provocation, or other causes," certain violent crimes carry significant probative value. Estrada, 430 F.3d at 617 (citations omitted). Specifically, violent "crimes requiring planning or preparation bear more strongly on veracity than violence alone suggests because planning indicates deliberate and injurious violation of basic standards rather than impulse or anger, and usually it involves some element of deceiving the victim." Id. at 618 (quoting CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE § 6.31 at 563-64 (2d ed. 1999) (hereinafter, "MUELLER & KIRKPATRICK, EVIDENCE § 6.31")).

Every incarcerated witness which Plaintiff intends to call has been convicted of intentionally killing another human being – whether it be voluntary manslaughter or murder – and have been sentenced to a term of imprisonment anywhere from fifteen (15) years to life. Defendants will address each respective witness and their felony convictions in turn, as each requires an independent balancing analysis under Fed. R. Evid. 403.

**A. Matthew Marcotte**

On April 2, 2015, Matthew Marcotte was indicted by a Rhode Island Grand Jury on one count of 1st Degree murder and one count of Conspiracy to Commit Murder stemming from the fatal stabbing of his victim, who was also the brother of a Rhode Island Supreme Court Justice. *See* Defs.' Exhibit B, Matthew Marcotte v. State of Rhode Island, PM-2023-00250, Order and

Decision Denying Plaintiff's Application for Post-Conviction Relief, January 9, 2026.[2] On June 22, 2016, Marcotte entered pleas of guilty to an amended charge of 2nd Degree Murder and Conspiracy. Id. At the plea allocution hearing, the Court asked Marcotte if he would like to say any words prior to the Court imposing his sentence. Marcotte responded, "Yeah . . . . May he rot in f****** peace. That's what I got to say. I'm no coward . . . . He got what he deserved. So thank you. That's all I got to say." Id. at p. 17. Marcotte was then sentenced to ten (10) years on the Criminal Conspiracy charge, and a term of life imprisonment for the 2nd Degree Murder. Id. at p. 1.

The Post-Conviction Court found that Marcotte's plea allocution and "celebration of the victim's murder . . . goes further than demonstrating the intentionality required for second-degree murder—it also evinces the premeditation necessary to sustain a conviction for first-degree murder because Petitioner explained his motive for causing the victim's death." Matthew Marcotte v. State of Rhode Island, PM-2023-00250, Order and Decision Denying Plaintiff's Application for Post-Conviction Relief, January 9, 2026, p. 18. Marcotte's murder conviction was thus the result of premeditated malice and a complete disregard for the basic notions of the value of human life. *See* Estrada, 430 F.3d at 618 ("Violent crimes involving . . . premeditation are relatively higher in probative value because **they suggest the witness is willing to break the law when it furthers his interests**." (quoting WRIGHT & GOLD § 6134 at 233) (emphasis added)). More importantly, Marcotte admittedly holds no remorse for his actions, stating the victim "got what he deserves," which does not merely suggest, but rather proves, that Marcotte is willing to break and/or ignore the law when it furthers his own interests. Id. (noting "that the gravity of an offense may bear on

[2] Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

truthfulness, to the extent that more serious offenses indicate a stronger willingness to ignore the law." (citing MUELLER & KIRKPATRICK, EVIDENCE § 6.31 at 564)).

The nature of Marcotte's felony conviction, then, is highly probative, bearing strongly on veracity, propensity for truthfulness, and disposition to deceive. This probative value is not substantially outweighed by any potential prejudice, and introduction of the name, nature, number, date, and sentence for the felony for which he was convicted will not result in any confusion of the issues or delay. Because "**it is the jury's function to assess the probative value of a witness's specific conviction or convictions as part of its overall evaluation of the witness's credibility**," Estrada, 430 F.3d at 616, Defendants submit this evidence must necessarily be presented to the jury.

**B. Kyle Hitchcock**

Kyle Hitchcock was arrested and charged with homicide by child abuse on or about May 17, 2015, after the death of a four (4) month-old child. *See* Defs.' Exhibit C, Hitchcock Arrest Warrant and Sentencing Sheet. The victim suffered from internal bleeding on the left side of his head which ultimately proved to be fatal. *See* Defs.' Exhibit C. Hitchcock ultimately pled guilty to Voluntary Manslaughter and was sentenced to a fifteen (15) year term of imprisonment on April 20, 2016. *See* Defs.' Exhibit C.

The evidence surrounding Hitchcock's prior felony conviction should include the name and nature of the crime, the number of counts, the date of the disposition, and the length of his sentence. "[C]rimes that involve evasions of responsibility or abuse of trust, a category that includes . . . abuse of children in [the witness's] care," such as homicide by child abuse, "rank[] relatively high on the scale of veracity-related crimes, although not so high as to fall clearly within the second prong of Rule 609(a)." Estrada, 430 F.3d at 618 (citing United States v. Hayes, 553

F.2d 824, 828 (2d Cir. 1977) and MUELLER & KIRKPATRICK, EVIDENCE § 6.31 at 563). Therefore, Hitchcock's felony conviction is significantly probative as to his disposition to deceive and propensity for truthfulness. Moreover, the gravity of the offense bears on truthfulness, as it indicates "a stronger willingness to ignore the law . . . [and] [a] particularly heinous crime[] [is] high in probative value insofar as [it] reflect[s] a rejection of social mores." Id. (citing MUELLER & KIRKPATRICK, EVIDENCE § 6.31 at 564).

This significant probative value is not substantially outweighed by any potential prejudice, and introduction of the name, nature, number, date, and sentence for the felony for which he was convicted will not result in any confusion of the issues or delay. Because "it is the jury's function to assess the probative value of a witness's specific conviction or convictions as part of its overall evaluation of the witness's credibility," id. at 616, and "the balance usually should be struck in favor of admissibility," id. at 620, Defendants submit this evidence must necessarily be presented to the jury.

**C. Rashaun Zion Dukes**

Rashaun "Zion" Dukes was arrested and charged with 1st Degree Burglary and Murder on November 18, 2018. *See* Defs.' Exhibit D, Dukes RAP and Sentencing Sheet. Dukes ultimately pled guilty to the lesser offense of Voluntary Manslaughter on June 13, 2022, and was sentenced to a thirty (30) year term of imprisonment on October 13, 2022. *See* Defs.' Exhibit D.

The evidence surrounding Dukes's prior felony conviction should include the name and nature of the crime, the number of counts, the date of the disposition, and the length of his sentence. It is indisputable "Congress anticipated that crimes of stealth (*e.g.*, smuggling, burglary), while not quite crimes of 'dishonesty or false statement,' do reflect lack of credibility and should be admitted unless significantly prejudicial." Estrada, 430 F.3d at 619 (citations omitted). Dukes's

premeditated burglary and intentional killing of his victim is highly probative, bearing directly on his propensity to testify truthfully, as it demonstrates a deceitful disposition and a willingness to break the law when it furthers his interests. Id. at 618-19. This probative value is not substantially outweighed by any potential prejudice, and introduction of the name, nature, number, date, and sentence for the felony for which he was convicted will not result in any confusion of the issues or delay. Because "it is the jury's function to assess the probative value of a witness's specific conviction or convictions as part of its overall evaluation of the witness's credibility," id. at 616, and "the balance usually should be struck in favor of admissibility," id. at 620, Defendants submit this evidence must necessarily be presented to the jury.

**D. Antonio Lorenzo Goodwin**

Antonio Lorenzo Goodwin was arrested and charged with Murder on January 6, 2010. *See* Defs.' Exhibit E, Goodwin Arrest Warrant and Sentencing Sheet. Goodwin submitted a sworn written confession that he participated in an armed robbery with the victim before shooting the victim with a 12-guage shotgun multiple times, resulting in the victim's death. *See* Defs.' Exhibit E. Goodwin ultimately pled guilty to the lesser offense of Voluntary Manslaughter and was sentenced to a twenty (20) year term of imprisonment on May 16, 2011. *See* Defs.' Exhibit E.

The evidence surrounding Goodwin's prior felony conviction should include the name and nature of the crime, the number of counts, the date of the disposition, and the length of his sentence. Goodwin's murder victim was a former 'partner-in-crime' which Goodwin committed an armed robbery beside and then, after the 'job' was done, shot multiple times and left the victim to die. This deceitful act is significantly probative, bearing on Goodwin's propensity to testify truthfully as it involves an abuse of trust, premeditation, and demonstrates a willingness to break the law when it furthers his interests. Estrada, 430 F.3d at 618-19. This probative value is not substantially

outweighed by any potential prejudice, and introduction of the name, nature, number, date, and sentence for the felony for which he was convicted will not result in any confusion of the issues or delay. Because "it is the jury's function to assess the probative value of a witness's specific conviction or convictions as part of its overall evaluation of the witness's credibility," id. at 616, and "the balance usually should be struck in favor of admissibility," id. at 620, Defendants submit this evidence must necessarily be presented to the jury.

**IV. The Prior Conviction History of the Plaintiff (Including Any Exhibits that Reference the Same) Should be Admitted Under Rule 609(a)(1)(A).**

Plaintiff seeks to limit impeachment evidence of his prior felony conviction to "the fact that he has been convicted of a felony and is serving a sentence of incarceration, and, if the Court deems it necessary, the date of the conviction." ECF No. 189 at 10. Plaintiff seeks for the Court to exclude the name and nature of the offense, the length of the sentence, the identity or location of any victim, any reference to an alleged escape attempt, and any reference to the 2018 Lee Correctional Institution riot or to any investigation of Mr. White's involvement in it." ECF No. 189 at 10-11. Plaintiff further states he "stands ready to enter an appropriate stipulation." ECF No. 189 at 11. Defendants reject any stipulation offered and are "entitled to prove [their] case free from any [plaintiff]'s option to stipulate the evidence away." Old Chief v. United States, 519 U.S. 172, 189, 117 S. Ct. 644, 654 (1997).

Plaintiff was arrested and charged with 1st Degree Burglary, Attempted Murder, Possession of a Weapon During Commission of a Violent Crime, Armed Robbery, Kidnapping, and Conspiracy to Commit Kidnapping on January 30, 2017. *See* Defs.' Exhibit F, Pl.'s Arrest Warrants and Sentencing Sheets. Plaintiff and two co-offenders forced their way into the residence of the victim at 12:30 a.m. and while inside the residence, Plaintiff shot the victim in the chest area causing injuries that could result in death prior to fleeing the scene while carrying away the

victim's personal property. *See* Defs.' Exhibit F. Plaintiff ultimately pled guilty to Attempted Murder and 1st Degree Burglary and was sentenced to a fifteen (15) year, concurrent term of imprisonment on June 30, 2018. *See* Defs.' Exhibit F.

In addition, Plaintiff was arrested and charged with 1st Degree Assault & Battery, Possession of a Weapon During Commission of a Violent Crime, and attempted Armed Robbery on March 20, 2020. *See* Defs.' Exhibit F. Plaintiff, while attempting to rob a correctional officer of the security keys for the unit in which Plaintiff was being housed, used two homemade edged weapons (shanks) to cut the victim on both arms while demanding that the victim turn over the security keys. *See* Defs.' Exhibit F. Plaintiff ultimately pled guilty to 1st Degree Assault & Battery and sentenced to a four (4) year, concurrent term of imprisonment on February 20, 2024. *See* Defs.' Exhibit F.

As previously explained, "Congress anticipated that crimes of stealth (*e.g.*, smuggling, burglary), while not quite crimes of 'dishonesty or false statement,' do reflect lack of credibility and should be admitted unless significantly prejudicial." Estrada, 430 F.3d at 619 (citations omitted). Moreover, kidnapping and robbery further reflect adversely on a person's integrity and therefore bear on honesty, involving levels of deceit, fraud, and theft. Finally, Plaintiff's premeditated burglary, attempted murder, and assault during an attempt to rob the correctional officer's security keys are highly probative, bearing directly on his propensity to testify truthfully and deceitful disposition, demonstrating a complete disregard for the rule of law and a willingness to break it in order to further his own interests. Estrada, 430 F.3d at 618-19. This probative value is not substantially outweighed by any potential prejudice, and introduction of the name, nature, number, date, and sentence for the felony for which he was convicted will not result in any confusion of the issues or delay.

Defendants acknowledge Federal Rule of Evidence 404(b) prohibits the admission of "[e]vidence of any other crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence surrounding Plaintiff's felony convictions, however, is not being offered to prove Plaintiff's character insofar as to show that Plaintiff acted in conformity therewith on a particular occasion. Instead, it is being offered to impeach, as it is directly probative and relevant to his credibility as a witness. The heightened interest in prevention of evidence which could potentially prejudice a jury into believing the Plaintiff's criminal history makes it more likely that he committed a crime in this instance is a non-issue: this is a civil trial, brought by Plaintiff, in which he has decided to testify. Because "it is the jury's function to assess the probative value of a witness's specific conviction or convictions as part of its overall evaluation of the witness's credibility," id. at 616, Defendants submit this evidence must necessarily be presented to the jury.

**V. The Prior Disciplinary History of the Plaintiff (Including Any Exhibits that Reference the Same) Should be Admitted Under Fed. R. Evid. 404(b)(2).**

Prior evidence demonstrating the nature of the threat Plaintiff posed is directly relevant and probative to the jury's inquiry into Defendants' thought processes and intentions, which is necessary to prove an element of Plaintiff's claims. Evidence of a prior act is admissible when offered to prove "**motive**, opportunity, **intent**, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2) (emphasis added). The Fourth Circuit utilizes a four-part test to assess admissibility of prior-act evidence: "(1) the prior-act evidence must be relevant to an issue other than character, such **as intent**; (2) it must be necessary to prove an element of the [claim]; (3) it must be reliable; and (4) its probative value must not be substantially outweighed by its prejudicial nature." Smith v. Balt. City Police Dep't, 840 F.3d 193, 201 (4th

Cir.), *as amended* (Nov. 1, 2016) (quoting United States v. Garcia-Lagunas, 835 F.3d 479, 493 (4th Cir. 2016)) (emphasis added).

To set forth a cognizable Eighth Amendment claim for excessive force, an inmate must put forth facts sufficient to establish both an objective and subjective component: the objective seriousness of the harm inflicted or the deprivation suffered, and the defendant prison official's subjective, malicious and sadistic state of mind. Alexander v. Connor, 105 F.4th 174, 182 (4th Cir. 2024). The subjective component for excessive force claims imposes "a demanding standard," Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019), in part because "direct evidence of motive or intent may be hard to come by." Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). To satisfy the subjective component, the inmate must show the officer did not apply force "in a good faith effort to maintain or restore discipline[,]" but rather "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986). Where a prison official maliciously and sadistically uses force to cause an inmate harm, a constitutional violation occurs regardless of how significant the injury is. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam).

Therefore, "the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline.'" Parker v. Stevenson, 625 F. App'x. 196, 198 (4th Cir. 2015) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)). To determine an officer's subjective state of mind, i.e. their intent, the Fourth Circuit has identified the following non-exhaustive four-factor test:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) **the extent of any reasonably perceived threat that the application of force was intended to quell**; and (4) any efforts made to temper the severity of a forceful response.

Escobar-Salmeron v. Moyer, 150 F.4th 360, 372 (4th Cir. 2025) (quoting Iko, 535 F.3d at 239) (emphasis added). These factors are relevant to the ultimate determination under the Eighth

Amendment, as "[f]rom such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (citations omitted). The third factor, "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials," particularly requires consideration of the "**basis of the facts known to them**" at the time of the incident in question. Id. (emphasis added).

Moreover, Plaintiff sets forth a state law claim for assault against Defendant Brazil in his individual capacity. In response, Defendant Brazil has asserted immunity under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. §§15-78-10, et. seq. A government employee sued in their individual capacity is "immune from suit under the SCTCA unless they (1) acted outside the scope of employment; or (2) committed actual fraud or acted with actual malice, **intent to harm**, or committed a crime involving moral turpitude." McDowell v. S.C. Dep't of Pub. Safety, No. 4:23-cv-00220-JD-KDW, 2024 U.S. Dist. LEXIS 158728, at *18 (D.S.C. Sep. 4, 2024) (citing DeCecco v. Univ. of S.C., 918 F. Supp. 2d 471, 521 (D.S.C. Jan. 16, 2013)); *see* S.C. Code Ann. § 15-78-60(17) ("The governmental entity is not liable for a loss resulting from . . . employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, **intent to harm**, or a crime involving moral turpitude . . . ." (emphasis added)). South Carolina courts have held that "whether the officers' conduct constituted an intent to harm is a factual question for the jury." White v. City of N. Charleston, No. 2020-UP-231, 2020 S.C. App. Unpub. LEXIS 274, at *5-6 (Ct. App. Aug. 5, 2020).

Plaintiff asserts his prior disciplinary record "is the archetype of" impermissible character evidence under Fed. R. Evid. 404, describing it as "a catalog of alleged institutional rule violations

offered to suggest that the plaintiff is a troublemaker who must have been resisting, and therefore deserved the force he received." ECF No. 189 at 5. Plaintiff further asserts the Fourth Circuit previously "rejected precisely this use of prior-contact evidence in a civil rights trial," Smith v. Balt. City Police Dep't, 840 F.3d 193, 201 (4th Cir.), *as amended* (Nov. 1, 2016), "holding that a plaintiff's prior arrests were inadmissible where they were offered 'for purposes of credibility, propensity, and character,' and observing that even where such evidence carries 'a trace of probative value,' the 'risk of prejudice' is 'enormous' because jurors are apt to assume that 'where there's smoke, there's fire.'" Id. (citing Smith, 840 F.3d at 203-04).

Plaintiff's analysis of the caselaw is incorrect as it applies to the case at hand. In Smith, a Fourth Amendment excessive force case brought under § 1983, the Fourth Circuit found evidence of the plaintiff's three prior arrests was clearly used by the defendants "to show character and propensity, rather than to demonstrate the extent of [plaintiff's] damages." 840 F.3d at 203. The Fourth Circuit further found this evidence created an "enormous" risk of prejudice because the defendants made no record of "whether the three prior arrests involved conduct remotely similar to the arrest in this case," and "by eliciting the mere fact of [plaintiff's] three prior arrests with no further details, the jurors were permitted to fill in the gaps themselves and let their imaginations run wild." Id. Defendants are not offering this evidence in the context of damages; rather, Defendants are offering this evidence to provide the jury with insight on the threat posed by Plaintiff in the eyes of the Defendants, and Defendants' subjective intentions in applying force to quell said threat. This evidence is not being offered to show that plaintiff has the character trait of being "a troublemaker" to suggest plaintiff acted in accordance with his troublemaking tendencies, i.e. "to suggest that the plaintiff must have been resisting," in this instance. ECF No. 189 at 5.

To be sure, the subjective standard under an Eighth Amendment claim for excessive force is materially different to "the objective reasonableness test we apply under the Fourth Amendment: The question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers *did use* force for that reason." Brooks, 924 F.3d at 113 (citation and internal quotation marks omitted) (emphasis in original); *see* Graham v. Connor, 490 U.S. 386, 397-98 (1989) (emphasizing "the subjective motivations of the individual officers are of central importance in deciding whether force used against a convicted prisoner violates the Eighth Amendment."); *see also* Orem v. Rephann, 523 F.3d 442, 447 (4th Cir. 2008) (discussing importance of motive to excessive force claims). While the subjective intent of an officer is irrelevant to an excessive force claim under the Fourth Amendment, "what the officer knew at the time" of the incident, however, is a critical inquiry in **any** assessment of reasonable force. Kingsley v. Hendrickson, 576 U.S. 389, 395-97 (2015) (determining "whether the requirements of a §1983 excessive force claim brought by a pretrial detainee must satisfy the subjective standard or only the objective standard.").

Therefore, prior evidence demonstrating the nature of the threat Plaintiff posed is directly relevant and probative to the inquiry into Defendants' thought processes and intentions. The jury must be informed about the facts about the Plaintiff known to the Defendants at the time which were involved in determining "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials," Whitley, 475 U.S. at 321, in order to determine "whether force was applied in a good-faith effort to maintain or restore discipline." Parker, 625 F. App'x. at 198. The extent of the threat posed by Plaintiff, as reasonably perceived by Defendants, bears directly on the nature for the force applied and the Defendant's subjective state of mind in applying said force. Accordingly, the Defendants' respective, subjective intentions are directly

relevant and indeed "necessary to prove an element of the" claims at issue in this matter. Smith v. Balt. City Police Dep't, 840 F.3d 193, 201 (4th Cir.), *as amended* (Nov. 1, 2016) (quoting United States v. Garcia-Lagunas, 835 F.3d 479, 493 (4th Cir. 2016)).

The following evidence sheds light on the extent of the reasonably perceived threat Plaintiff posed in the minds of the Defendants, and the Defendant's subjective state-of-mind when applying force: (a) multiple prior incidents where Plaintiff was found to have contraband within his cell; (b) March 20, 2020, incident where Plaintiff stabbed a correctional officer; and (c) September 30, 2019, incident where Plaintiff threw urine on an officer. *See* Defs.' Exhibit G, Incident Reports. These incidents demonstrate the factual basis known to them at the time in question and directly relate to the level of threat posed by Plaintiff.

Finally, the Fourth Circuit noted that, "[o]f course, prejudice may be mitigated by 'carefully framed' limiting instructions regarding 'proper consideration of [the] evidence.'" Smith, 840 F.3d at 203-04 (quoting United States v. Lespier, 725 F.3d 437, 448 (4th Cir. 2013)); *see* Sanchez v. City of Chicago, 700 F.3d 919, 932 (7th Cir. 2012) (finding harmless error in allowing evidence of a § 1983 plaintiff's arrest record to be admitted where the court "gave a limiting instruction admonishing the jury that it was to consider this evidence only insofar as it shed light on the extent of any emotional harm he experienced."); Howard v. City of Durham, 68 F.4th 934, 957 (4th Cir. 2023) (finding court did not err in allowing evidence of a § 1983 plaintiff's history of arrests and drug us and dealing where "the potential prejudice that could arise from such evidence . . . was mitigated by a limiting instruction."). Defendants are not opposed to a limiting instruction admonishing the jury that it is to consider this evidence only insofar as it sheds light on the extent of the reasonably perceived threat Plaintiff posed in the minds of the Defendants, and the Defendant's subjective state-of-mind when applying force.

## CONCLUSION

Based on the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's Motion *in Limine* and allow Defendants, their witnesses, and counsel to refer to, elicit testimony concerning, or otherwise introduce evidence of: (1) Plaintiff's prior medical and mental-health records, including prior suicide attempts; (2) the gang membership and affiliation of Plaintiff and of the incarcerated witnesses; (3) the name, nature, and details of the incarcerated witnesses' offenses of conviction; (4) the name, nature, and details of Plaintiff's offense of conviction; and (5) the prior disciplinary history of Plaintiff.

Respectfully Submitted,

s/ Michael T. Smith
Michael T. Smith (Fed ID #4781)
Willson Jones Carter & Baxley, P.A.
325 Rocky Slope Road, Suite 201
Greenville, SC 29607
(864) 447-5239
mtsmith@wjcblaw.com
*Attorneys for Defendants Ervin Brazil, Casey Maloney, and Conor Fredericks*

s/ P. Christopher Smith, Jr.
P. Christopher Smith, Jr. (Fed ID 9921)
Clarkson Walsh & Crudup, PA
P.O. Box 6728
Greenville, SC 29606
(864) 232-4400
chris.smith@clarksonwalsh.com
*Attorney for Defendant Leon Morrell*

s/Stephanie H. Burton
Stephanie H. Burton (Fed ID 5009)
Gibbes Burton, LLC
308 East St. John St.
Spartanburg, SC 29302
(864) 327-5000
sburton@gibbesburton.com
*Attorney for Defendant Jeremiah McKissack*

August 14, 2026.